Condit v. Blackwell.

---

CONDIT *vs.* BLACKWELL.

19 193
57L 554

The records in public offices of other states, of matters which are not judicial proceedings, may be proved by a sworn copy, or by certificate, according to the act of congress ; but when received, their effect is the same as in the state of which they are records ; that effect must be shown by proving the law of such state upon the subject ; it cannot be presumed.

·. This cause was argued on final hearing, upon bill, answer, replication, and proofs.

*Mr. Condit* and *Mr. McCarter*, for complainant.

*Mr. Blake* and *Mr. C. Parker*, for defendant.

THE CHANCELLOR.

The complainant seeks to have a deed given by him to the defendant, for a house and lot in Orange, set aside, and the property conveyed back to him, on account of fraud in the bargain and consideration. The conveyance was made to the defendant in exchange for 2550 acres of land, in the state of Wisconsin, to which defendant claimed to have title by tax sales and deeds thereon. The deeds for exchange were both dated on the 17th day of June, 1865. The consideration in the deed to the defendant was $6500; it contained full covenants, subject to a mortgage of $2500. The consideration in the deed to the complainant was $100, and the covenant was only a warranty against the grantor, and all claiming under him. The fraud alleged is, that the complainant employed the defendant, who was a broker for the sale of real estate, to sell his Orange house and lot; that defendant proposed to him to exchange this property for lands in Wisconsin, which he represented were held by a Mr. Howell, of Cincinnati, by titles under tax sales, whom defendant represented as anxious to dispose of them for eastern property; that defendant represented to the complainant that he had been a practicing lawyer in Wisconsin, and was the agent and attorney of Howell, and was conversant with the title to these lands; that they were entirely free from encumbrances, and that the taxes thereon were paid up to the year 1865; that, although held under a title by sale for taxes, such title was as good as any other; that complainant would have no difficulty in disposing of them on account of the nature of the title, and that such title was as good as a fee or a patent from the state of Wisconsin.

The bill further alleges, that complainant did not know that the title to these lands was held by Blackwell until the execution of the deed by him, when Blackwell explained that fact by saying that he held the title as trustee for Howell, and had no interest therein, and complainant finished the exchange in ignorance that defendant was interested in the lands or the transaction, and supposing that defendant was acting as his agent, and placing full confidence in him on that account.

The injury complained of is, that upon an examination of the title, the complainant found that no taxes had been paid on these lands since 1857; that the title had never been in Howell, but had been always held by Blackwell for his own use; that there was $800 of unpaid taxes accrued since the tax sale; that 1500 acres had been redeemed by persons entitled to redeem; that to these Blackwell had no title whatever at the conveyance by him, and that, as to the residue, the title conveyed by Blackwell was of no value, by reason of the non-payment of taxes, and the right of redemption in the greater part vested in other parties, and that the title conveyed to Condit was not as good as a fee or a patent from the state of Wisconsin, but utterly valueless.

The complainant alleges, that he took the title only on account of the confidence placed by him in Blackwell and his statements, and if he had known the facts and the nature and value of a tax title, he would not have conveyed his house and lot in exchange for these lands.

The answer of the defendant fully denies all the allegations of the bill as to the representations on which the fraud is charged. It denies that he ever represented that Howell owned these lands, or any part of them, and says, on the contrary, that he told complainant that they belonged to him, from the beginning of the negotiations. It denies that he ever told complainant that a tax title, or the title to these lands, was as good as a fee or a patent from Wisconsin, and says that he truly and fully explained to him the nature of a tax title by the laws of Wisconsin, leaving him to decide

upon the sufficiency of it, and distinctly stated that the title might be contested by the former owners. It denies that he stated that complainant would have no difficulty of disposing of the lands on account of the title. It denies that he stated to Condit that the taxes were all paid, and says that he·expressly stated to Condit that the taxes were not all paid; that he had not paid them, and did not know what amount would be required to pay them.

These responsive statements in the answer are not contradicted by any witness, except the complainant, and his evidence is not supported by any facts or circumstances proved which would be equal to another witness, or on which, standing alone, any one of these charges could be considered as proved, sufficiently to found an adjudication or decree upon it. The fact that Blackwell afterwards represented these lands, in bargaining with another party, as free from taxes, even if fully proved, does not tend to support the allegation that he so represented the fact to Condit.

To entitle the complainant to relief, either on the ground of actual fraud by positive misrepresentations, or on the ground of legal fraud in not fully disclosing to him, while acting as his agent, all the real objections and difficulties as to the title, it is essential that there should be proof that the title conveyed to the complainant failed or was defective, as alleged in the bill. This is not admitted by the answer, and the burthen of proof is upon the complainant. These defects must be tested by the law of Wisconsin. The laws of Wisconsin are not, in fact or by theory of law, known to the courts of this state, and must be proved, either by experts, counsel learned in the law of that state, or copies of its statute, with the decisions of its courts thereon. In this case, the testimony of Blackwell, although not perhaps sufficient as that of a counselor of that state, must be received, as against him; it is the evidence of the defendant himself, admitted without objection. Besides this testimony, the official printed copy of the statutes of 1854, and of the revised statutes of 1858, were offered and read without ob-

jection, and received by the court. Beyond these, we do not know, in this cause, the laws of Wisconsin. The tax law in the revised statutes of 1858, Blackwell testifies, was repealed the next year, or soon after its passage, and the former laws substantially, or in the main substantially, re-enacted in its place—a fact which would seem to be supported by the documents offered by the complainant as copies of records in the office of the treasurer and the clerk of the supervisors of the county of Vernon, in which the lands lie, which are entirely invalid and illegal from and including the year 1859, if the tax law of 1858 was in force. By that law no lands could be sold until three years after the taxes became due; by these documents, in each year the lands were sold for the taxes of the previous year.

These county records are not proved by exemplification according to the act of Congress, but are sufficiently proved by sworn copies. They are declared by the act of Congress, to have the same effect when proved, as they would have in the state of which they are the public records. By the *Revised Statutes of Wisconsin of* 1858, *chap.* 18, § 178, the records and entries in the books of the county treasurer and the clerk of the supervisors, made in pursuance of the provisions of that chapter, are declared to be *prima facie* evidence of the facts therein stated. But the records and entries, of which copies are offered in this case, are clearly not made under the provisions of that chapter, as observed above.

Besides this provision, there is nothing in any law of that state, in the acts before me, or as proved by Blackwell, to show what is the effect of these entries when offered in evidence in Wisconsin. Without some positive provision of law, the entry, by any officer, opposite the lands in a tax list, of the words "deeded to A B," or "redeemed by C D," could not be taken as evidence of the fact. The law may require, as the act of 1854 did, that the deed should be in a prescribed form, or as the act of 1858 did, that the certificate of redemption should not be valid until countersigned by the county treasurer, and entered on his record. These

R *

short entries would not show how these requirements were complied with. The whole evidence offered in this case, to show that any of the lands in the deed to the complainant have been redeemed or re-sold for taxes since 1857, consists in copies of such records. They are not evidence by the law of New Jersey, and we do not know if they, or the records of which they are copies, would be by the laws of Wisconsin. And there is no other evidence that the taxes have been assessed on any of these lands since 1857. The presumption is great that such assessments have been made, but they may not be legal, or not sufficient to encumber these lands or to affect the title.

But it is contended that some, if not all, of these tax deeds are defective. The act of 1854 prescribes a form of deed (*chap.* 66, § 3). In these deeds the words "as the fact is," which are in two places in the prescribed form, are omitted. That omission has been held by the Supreme Court of Wisconsin to render the deed void. *Lain* v. *Cook*, 15 *Wis.* 446; *Lain* v. *Shepardson*, 18 *Wis.* 59; *Wakeley* v. *Mohr*, *Ibid.* 321.

But the act of 1854 is repealed by the general repealing act of 1858 (*Rev. Stat.*, *chap.* 191, § 1,) and by the tax act of that year, (*Rev. Stat.*, *chap.* 18,) by implication, and although section one hundred and fifty-three retains in force the then existing laws as to the conveyance and redemption of lands before sold for taxes, yet as that act seems to have been repealed in 1859, and these deeds were not given until 1862, and there is not in evidence any subsequent act, these deeds cannot here be held void on that account. The ground on which like cases were held void, was a very technical one, and very doubtful, and though I concur in (and would be bound by it if I did not) the conclusion at which the courts, with hesitation, but with sound reasoning, arrived, I am not prepared to presume that the new act of 1859 contained precisely the same requisitions, from the vague evidence of Blackwell as to the re-enactment of the old laws. Therefore, nothing appears here by which these deeds can be considered void.

Besides, there is no evidence or pretence that Blackwell, at the time of this exchange, knew of these decisions. The first made in 1862, and published in 1865, being after he had left the state. As he gave no warranty of title, except .as against himself, and those claiming under him, he cannot be liable for such defect, except on the ground of actual fraud.

This view of the case will make it unnecessary for me to consider the question raised and pressed with great ability and learning by the counsel of the complainant, whether Blackwell, being the agent of the complainant for the sale of his property to the time of the bargain for exchange, did not stand in such a fiduciary relation to him as required him to disclose and lay before him fully, to the extent of his own knowledge, every difficulty, doubt, and imperfection existing as to the title of the property conveyed to him. As the case is before me, the complainant is not entitled to relief.